## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

-------------------------------------------------------X
                    :           Civil Action 08-5413(PGS)

PHILIP GIANFREDI, et al.      :

                    :

        Plaintiffs,      :

                    :

                    :      **REPORT AND RECOMMENDATION**

        v.          :

                    :         April 5, 2010

                    :

HILTON HOTELS CORP., INC. d/b/a  :

CARIBE HOTEL SAN JUAN, et al.,  :

                    :

        Defendants.     :
-------------------------------------------------------X

**SALAS, UNITED STATES MAGISTRATE JUDGE:**

## I.  INTRODUCTION

When vacationing in Puerto Rico at the Caribe Hilton San Juan Hotel (the "Hotel"), Plaintiff

Philip Gianfredi slipped and fell while taking a shower in the bathroom at the Hotel, and sustained

injuries.  To that end, Plaintiffs Philip Gianfredi and Donna Gianfredi (the "Plaintiffs") brought this

action against Hilton International of Puerto Rico, Inc. d/b/a Caribe Hilton San Juan ("HIPR") and

Hilton Hotels Corporation ("HHC") (collectively the "Defendants").  What has ensued since is a

vigorous battle between the parties over whether or not this Court has personal jurisdiction over

HIPR and whether Plaintiffs may maintain a cause of action against HHC.  In response to

Defendants' prior motion to dismiss, Judge Sheridan found that the parties should engage in

jurisdictional discovery before answering that question.  Discovery has now concluded and

-1-

Defendants make their second trip before this Court reasserting their original argument.  The Court now agrees with Defendants that it lacks jurisdiction over HIPR and that an action cannot be maintained against HHC and presents its finding to the Hon. Peter G. Sheridan via Report and Recommendation, urging dismissal.

## II.   BACKGROUND

### A.   Defendants

Plaintiffs have named two defendants in the instant lawsuit, HIPR and HHC.  (*See* Docket Entry No. 1, the "Complaint").   The Complaint alleges that HIPR is a corporation organized in the State of Delaware which operates a hotel resort in Puerto Rico.  (*See* Complaint, Jurisdiction and Venue at ¶ 3).  The Complaint also alleges that HHC is a corporation organized in the State of Delaware which "operates, franchises, manages or participates in the incorporation or licensing, advertising of its brand for the facility d/b/a The Caribe Hilton San Juan...."  (*See id.* at ¶ 4).

Discovery revealed that the Hotel is owned and operated by HIPR.  *See* Hilton Hotels Corporation and Hilton International of Puerto Rico Inc.'s Amended Brief in Support of its Motion to Dismiss or, Alternatively, Motion to Transfer ("Def. Brief"), Ex. C at ¶ 5.  HIPR is a Delaware corporation and is owned by Hilton International, which is not a party to this litigation.  *See* Def. Brief at 5.  HHC is the parent company of Hilton International.  *See* Def. Brief, Ex. G.  In essence, there are three distinct Hilton entities, two of which are named, that Plaintiffs claim are liable for Mr. Gianfredi's injuries.  Simply put, HIPR owns the Hotel, Hilton International is the parent company of HIPR and HHC is the parent company of Hilton International. *See* Def. Brief, Ex. G.

HIPR pays a fee to Hilton International to provide advertising and marketing services.  *See* Plaintiffs' Brief In Opposition to Defendants' Amended Motion to Dismiss or Alternatively, Motion

to Transfer ("Pl. Opp.") at 11.  According to HIPR's corporate secretary, HIPR does not own, operate, hold a license or maintain any possessory rights over any business or hotel in New Jersey. *See* Def. Brief, Ex D.  HIPR does not own any property in New Jersey, solicit New Jersey residents, have contacts with New Jersey travel agents or do business in New Jersey.  *See id.*, Ex. D and F. Finally, HHC does not own, operate or hold any possessory rights over the Hotel.  *See id.*, Ex. C.

## B.  Plaintiffs, the Accident, and the Instant Complaint

According to the facts as plead in the Complaint, on February 15, 2007, Plaintiffs arrived at and checked into a room at the Hotel in San Juan, Puerto Rico.  (*See* Complaint at Facts, ¶ 1).  On the same day, Mr. Gianfredi took a shower in his hotel room and allegedly fell, turning his left ankle, due to a shift in the surface of the bathtub.  (*See id.* at ¶ 2).  Plaintiffs subsequently complained to the Hotel's manager and had their room changed.  At this time, Plaintiffs allege that the Hotel's manager admitted that he knew about the condition of the bathtub.  (*See id.* at ¶ 3).  Plaintiffs further allege that Mr. Gianfredi was unable to enjoy the rest of his stay due to the pain in his ankle and ultimately underwent surgery due to his injuries.  (*See id.* at ¶¶ 5-7).

On February 12, 2008, Plaintiffs filed their initial lawsuit in the District Court for the District of New Jersey.  *See* Def. Brief, Ex. A.  In Judge Ackerman's Opinion dated September 24, 2008, the Court dismissed the matter without prejudice due to Plaintiffs' insufficient service.  *Id.*  On November 3, 2008, Plaintiffs filed the instant Complaint seeking damages for Negligence (Count One) and Loss of Consortium (Count Two).  (*See generally* Complaint).  On January 16, 2009, Defendants responded to the Complaint by filing a motion to dismiss or, alternatively, a motion to transfer.  (*See* Docket Entry No. 27).  After oral argument,  Judge Sheridan denied the January 16, 2009 motion to dismiss and ordered the parties to engage in jurisdictional discovery.  (*See* Docket

-3-

Entry No. 42).   Specifically, Judge Sheridan ordered the parties to engage in "discovery limited to jurisdiction issues and to the relationship between the Caribe Hilton Puerto Rico/Hilton International of Puerto Rico, Inc. and Hilton Hotels Corporation...." (Docket Entry No. 45).  Upon completion of discovery, the Defendants were permitted to resubmit the motion to dismiss.  (*See id.*).

Defendants renewed their motion on September 16, 2009 asserting that (1) the Court cannot exercise personal jurisdiction over HIPR; (2) HHC does not have a duty to Plaintiffs because it does not own, operate or exercise possessory control over the Hotel and should be dismissed from this action as a matter of law; (3) the Court should transfer the case to the District of Puerto Rico and (4) the Court should dismiss this matter pursuant to the doctrine of *forum non conviens*.  *See generally* Def. Brief.  Because this Court finds that it does not have personal jurisdiction over HIPR and Plaintiffs have not presented facts sufficient to demonstrate HHC's duty, the Court need not reach the issues of transfer or *forum non conviens*.

## III.   PERSONAL JURISDICTION OVER HIPR

### A.   The 12(b)(2) Standard

When a defendant attacks the court's jurisdiction, the plaintiff shoulders the burden of demonstrating that jurisdiction is proper.  *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  "The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  *Id.* (citation and internal quotation marks omitted).  Plaintiffs must sustain their burden by establishing facts through sworn affidavits or other evidence; reliance on the bare pleadings is not enough.  *Patterson v. FBI*, 893 F.2d 595, 603-604 (3d Cir. 1990).  If the plaintiffs meet their burden, the burden shifts to the defendant who must make a

compelling case that the exercise of jurisdiction would be unreasonable.  *Mellon Bank*, 960 F.2d at 1226 (internal citations omitted).

**B.     Framework**

Under Federal Rule of Civil Procedure 4(k), personal jurisdiction over non-resident defendants may only be exercised to the extent that is authorized by the laws of the state in which the federal court sits.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long arm statute permits jurisdiction on a non-resident defendant to the extent that is permitted by the Constitution.  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   In determining whether sufficient minimum contacts exist, the court looks at "the relationship among the defendant, the forum, and the litigation."  *Pinker v. Rosche Hold.*, 292 F.3d 361, 368 (3d Cir. 2002).

Personal jurisdiction can be established by way of specific jurisdiction or general jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 & n. 8 & 9 (1984). In *O'Connor*, the Third Circuit set forth the following framework to determine if specific jurisdiction is present: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice.  496 F.3d at 317 (internal citations and quotation omitted).  To establish specific jurisdiction, plaintiffs need not show that the defendant(s) be physically located in the state while committing the alleged act(s).

-5-

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Nor is jurisdiction defeated merely because the bulk of harm occurred outside the forum.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984).  Instead, a single act may satisfy minimum contacts if it creates a substantial connection with the forum.  *See Burger King Corp.*, 471 U.S. at 476 n.18.

On the other hand, a court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state.  *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 415, n. 9.  The plaintiff must show more than mere minimum contacts with the forum state.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must be extensive and persuasive. *See Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

Regardless of whether a court exercises specific or general jurisdiction, it must be established that the defendant "has purposefully directed its activities toward the residents of the forum state, ... or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *IMO Idus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Plaintiffs argue that this Court may exercise both general and specific personal jurisdiction over HIPR.

## C.    Analysis

### i.    The Court lacks general jurisdiction over HIPR

Plaintiffs argue that HIPR has had systematic and continuous contacts with New Jersey resulting in general jurisdiction based on HIPR's alleged marketing and advertising aimed at New Jersey and its presence on the internet.  *See* Pl. Opp. at 16-19.  Plaintiffs' arguments are unavailing.

### a.      Marketing, Advertising and Revenue

First, Plaintiff argues that because "HIPR actively seeks economic entry into New Jersey and profits substantially from its connection with New Jersey" and "New Jersey is a part of HIPR's strongest key market," HIPR maintains systematic and continuous activities in the state, enough to confer general jurisdiction.  Pl. Opp. at 17.  Notably, the Third Circuit has squarely held that the mere fact that an out-of-forum entity derives substantial revenue or other resources from a particular forum is not enough to confer general jurisdiction.  *See Gehling v. St. George's School of Med. Ltd.*, 773 F.2d 539, 543-44 (3d Cir. 1985).  *Gehling* was a wrongful death action brought by the parents of a student who attended St. George's University School of Medicine in Grenada, West Indies.  *See id.* at 540.

The parents argued that because six percent of St. George's students matriculating with their son came from Pennsylvania (and that the school earned significant revenue from Pennsylvania as a result), general jurisdiction should lie.  *Id.* at 541.  The Third Circuit rejected the argument:

> Advanced educational institutions typically draw their student body from numerous states, and appellants' theory would subject them to suit on non-forum related claims in every state where a member of the student body resides. Thus, the fact that residents of the state apply and are accepted for admission to St. George's is of no moment. For the same reason, the fact that St. George's may be said to derive some percentage of its revenues from Pennsylvania residents in return for services provided in Grenada does not subject it to in personam jurisdiction.

*Id.* at 542-43 (internal citations omitted).  So too here.  Foreign resorts, like universities, draw customers from all across the United States.  Merely because one state allegedly sends a disproportionate amount of revenue to the foreign forum does not automatically render certain domestic fora as suitable for jurisdictional purposes.  Simply stated, the passive acceptance of

customers and revenue from certain states cannot, under traditional notions of fair play and substantial justice, subject HIPR to jurisdiction in New Jersey for any cause of action.

Second, Plaintiffs' arguments regarding HIPR's alleged advertisements, relationships with New Jersey companies and emails allegedly aimed at New Jersey residents are equally unavailing to demonstrate general jurisdiction. *See Decker v. Circus Circus Hotel*, 49 F.Supp. 2d 743, 749 (D.N.J. 1999) (finding that the record did not reflect that the defendants had targeted New Jersey in its advertising and therefore, the defendants were not subject to personal jurisdiction in the New Jersey courts). Significantly, Plaintiffs have failed to elicit evidence that HIPR targeted its advertising and marketing towards New Jersey or relationships with New Jersey companies. In fact, Mr. Campo, HIPR's corporate representative, testified that HIPR does not specifically target New Jersey, but rather, through its relationship with Hilton International, HIPR focuses its advertising efforts on certain regions of the country, such as the Northeast. *See* Pl. Opp., Certification of Alan C. Thomas, Esq. dated September 30, 2009 ("Thomas Cert."), Exhibit M 34:1 to 35:24. Mr. Campo also testified that HIPR has never placed an ad in a New Jersey publication. He further elaborated that HIPR advertised regionally in the New York Times, and nationally in USA Today and American Headlines. *See* Defendants' Amended Reply Brief in Support of Its Motion to Dismiss, or, Alternatively, Motion to Transfer ("Def. Reply"), Campo Deposition Transcript at 38:11 to 39:16.

Third, Plaintiffs have also failed to demonstrate, other than through sweeping generalizations of Mr. Campo's testimony, that HIPR maintains relationships with companies in New Jersey and travel agents located in New Jersey. Mr. Campo's testimony did not reveal many details about HIPR's relationship with New Jersey based pharmaceutical companies but did demonstrate that the Hilton International sales representatives' contacts with pharmaceutical companies occurred locally

in Puerto Rico.  *See* Def. Reply, Campo Deposition Transcript at 63:15 to 65:2.  Mr. Campo's testimony also revealed that HIPR's sales department has relationships with travel agent wholesalers, not specific travel agents.  *Id.* at 91:8 to 20.   Plaintiffs did not set forth any evidence that HIPR maintains relationships with such wholesalers in New Jersey.   Finally, Plaintiffs' conclusory allegations that HIPR sent them emails subsequent to Plaintiffs visit are not substantiated by any proof of such emails.  Without such copies, it is impossible to ascertain the sender or the content of the emails and to assess the impact on the jurisdictional analysis.

The record before the Court shows that HIPR has little, if any, connection to New Jersey. HIPR is a corporation organized and existing under the laws of the State of Delaware.  Def. Brief, Ex. D. at ¶ 2.   HIPR is not registered to accept service in New Jersey and does not own, operate or maintain a possessory right over any businesses in New Jersey.  *Id.* at ¶¶ 3-7.   Importantly, Plaintiffs have not demonstrated that HIPR directs advertisements to New Jersey, directly solicits New Jersey residents or has contacts with New Jersey travel agents.  *See* Def. Brief at 18.   Therefore, Plaintiffs have failed to meet their burden to establish that HIPR has systematic or continuous contacts with New Jersey or that HIPR purposefully availed itself to New Jersey's laws for the pursuit of profit. Accordingly, general jurisdiction cannot lie.

### b.  Internet Presence

Second, Plaintiffs argue that HIPR has "an extensive presence on the internet which requires this court to exercise jurisdiction."  Pl. Opp. at 18.  In support of this contention, Plaintiffs argue that HIPR (1) enters into binding and enforceable contracts with guests over the Internet and (2) makes approximately $20,000,000 to $24,000,000 yearly through internet reservations.  *Id.* at 19.

Plaintiffs' argument that the website is enough to confer jurisdiction may be disposed of

easily.  The question of whether or not a website, by itself, can confer jurisdiction has been often

litigated in this district and elsewhere, and courts have employed a determinative test based on the

nature and characteristics of the website in question.  *See, e.g.*, *Machulsky v. Hall*, 210 F. Supp. 2d

531, 538-39 (D.N.J. 2002) (utilizing a test for jurisdiction based on the grouping of a website in one

of three distinct categories based on the interactivity of the site).  It must be noted that Plaintiffs have

a tough hill to climb with this argument, as courts regularly decline to exercise general jurisdiction

based on this framework even with interactive websites.  *See, e.g.*, *Snyder v. Dolphin Encounters Ltd.*,

235 F. Supp. 2d 433, 440 (E.D. Pa. 2002); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods.*

*Ltd.*, 64 F. Supp. 2d 448, 451 (E.D. Pa.1999).

This Court cannot engage in a meaningful analysis of the website, as Plaintiffs have made no

meaningful proffer to this Court about its nature and characteristics.  In fact, <u>Defendants</u> actually

pointed the Court to the web address where information about the Hotel could be found, noting that

the Hotel does not have its own website.  *See* Def. Brief at 19, n.3.  Moreover, Plaintiffs have not

cited any proof for the amount of income they allege HIPR generates through internet reservations.

Finally, Plaintiffs have not demonstrated the interactivity of the website where information about

HIPR can be found.  It is, indeed, Plaintiffs' burden at this stage to show how New Jersey is the

suitable forum based on the website.  This they have not done.

Accordingly, this Court does not have general jurisdiction over the Defendants.

**ii.     The Court lacks specific jurisdiction over HIPR**

In support of its argument that this Court has specific jurisdiction over HIPR, Plaintiffs rely

upon two cases, *Mastondrea v. Occidental Hotels Mgmt. S.A.*, 391 N.J. Super. 261, 918 A.2d 27

(App. Div. 2007) and *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007) and very

few facts.  Both cases, however, are distinguishable from the facts in the instant matter.  Furthermore, Plaintiffs have failed to elicit facts sufficient to demonstrate HIPR directed activity to New Jersey.  Accordingly, Plaintiffs have failed to meet their burden to establish HIPR's minimum contacts with New Jersey.  Therefore this Court cannot exercise specific personal jurisdiction over HIPR.

In *Mastondrea*, the plaintiff brought a personal injury action against a Mexican hotel in New Jersey.  391 N.J. Super. at 266-67.  The Appellate Division affirmed the trial court's determination that the hotel was subject to specific personal jurisdiction in New Jersey.  *Id.*  The court premised its finding that jurisdiction was proper on (1) a cooperative marketing agreement between the hotel's marketing agent (working on behalf of the hotel) and a New Jersey based travel agency and (2) the placement of targeted advertising in the Newark Star Ledger pursuant to the marketing agreement.  *Id.* at 275.  Both the contract with the New Jersey entity and the plaintiff's reliance upon the New Jersey advertising to book her visit to the hotel were critical components of the court's analysis.  *Id.* at 269-70.   Such is not the case here.  Plaintiffs have neither demonstrated that HIPR directed advertising towards New Jersey, nor entered into any marketing agreements with New Jersey based travel agencies or wholesalers.  As such, *Masondrea* is not applicable.

Plaintiffs' reliance on *O'Connor* fails for similar reasons.  In *O'Connor*, the plaintiff slipped and fell at a Barbados hotel while receiving a massage treatment.  496 F.3d at 315.  The Third Circuit found that the District Court had specific jurisdiction based on mailings from the hotel to the plaintiff's home, which resulted in the plaintiff booking the massage treatment.  *Id.* at 323-24.  The court, focusing on the mailing of the brochure to plaintiff's home and plaintiff's follow-up telephone calls to the hotel, found that "but for" the mailing, plaintiff "never would have purchased a massage, and he would not have suffered a massage-related injury."  *Id.* at 323.  Therefore, the court found that

-11-

the hotel had "availed itself" to the laws of Pennsylvania by directing mailings and phone calls to its residents and  by entering into a contract with the plaintiff for spa services based on those mailings. Thus, specific jurisdiction was proper.  *Id.* at 323-24.  Once again, however, Plaintiffs have not demonstrated that HIPR has "availed itself" to specific jurisdiction in New Jersey through mailings or phone calls.  Instead, Plaintiffs rely upon their unilateral contact to the Hotel in booking their trip, which does not rise to the level of activity required to make the requisite showing for minimum contacts.

In sum, HIPR has little to no contact with New Jersey.  Plaintiffs have not set forth any evidence that HIPR has any contracts with New Jersey travel agencies or has targeted its advertising towards New Jersey.  Plaintiffs have also not proven that HIPR entered New Jersey to seek their business.  Thus, Plaintiffs have failed to make the requisite showing of HIPR's minimum contacts with New Jersey and specific jurisdiction is not proper.

### iii.    The Court cannot exercise personal jurisdiction over HIPR based on agency principles

As an alternative theory, Plaintiffs contend that this Court can exercise either general or specific jurisdiction over HIPR utilizing a theory of agency.  *See* Pl. Brief at 25-28.  In essence, Plaintiffs argue that (1) HHC is subject to personal jurisdiction in New Jersey based on systematic and continuous contacts; (2) HIPR (the owner of the Hotel) pays HHC for certain services, such as marketing and web services; and (3) through those services, HHC acts as an agent for HIPR in New Jersey.  *Id.* at 26.

Plaintiffs, however, fail to point to a single activity performed by HIPR aimed at New Jersey through HHC.  Plaintiffs mention, in vague and general terms, that "HIPR pays for [HHC] to provide

extensive, continuing and regularly occurring services to HIPR….” *Id.* Plaintiffs only mention of activity in New Jersey, however, is the assertion that “New Jersey guests can book their stay with HIPR on various Hilton websites…” and “New Jersey guests form contracts with HIPR on Hilton Hotel Corporation’s websites....” *Id.* Nothing in those statements, however, demonstrates that HIPR directed any efforts towards New Jersey through HHC.

Plaintiffs cite to two cases, *Chrobak v. Hilton International, et al.*, No. 06 CIV. 1916, 2008 WL 4444111 (S.D.N.Y. Sep. 30, 2008) and *Russell v. Hilton International of Puerto Rico, Inc.*, No. 93 CIV. 2552, 1994 WL 38516 (S.D.N.Y. Feb. 4, 1994), both of which are based on New York law, to demonstrate how other courts have found personal jurisdiction over other Hilton hotels. These cases, which are not binding upon this Court, are distinguishable from the facts of the instant matter and do not lend support to Plaintiffs’ theory.

In this line of cases, referred to as “reservation service cases,” the New York courts have focused on whether “the New York representative is authorized to bind the foreign defendant by making and confirming reservations on its behalf.” *Russell*, 1994 WL 38516, at *2. The courts considered whether the “out-of-state defendant conducted, through its agent in New York, all the business which [it] could do were it here by its own officials.” *Id.* (internal quotations omitted). Essentially, in *Russell*, because the New York Hilton could make binding reservations on behalf of the Caribe Hilton Hotel, the court found that the Caribe Hilton had “purposefully availed itself” of the privileges of conducting business in New York. *See id.* at *3. Similarly, the New York court in *Chrobaki* utilized the underlying analysis in the “reservation service cases” to find personal jurisdiction over the Caribe Hilton Hotel in New York. *See Chrobak*, 2008 WL 4444111, at *4. Here, Plaintiffs have not made any allegations which support a finding that a New Jersey

representative of HHC can bind HIPR or the Hotel.  Moreover, Plaintiffs have not pointed to a single Hilton hotel in New Jersey, which has binding authority to make reservations on behalf of HIPR. Furthermore, Plaintiffs booked their reservation through an independent online reservation website, which Plaintiffs have not alleged has specific contacts with New Jersey.  As such, Plaintiffs have failed to meet their burden to demonstrate that the exercise of personal jurisdiction over HIPR through agency principles is proper.

Based on the above analysis, it is this Court's recommendation that HIPR be dismissed from this action for lack of personal jurisdiction.

## IV.   HHC'S MOTION TO DISMISS

Defendants also seek for this Court to dismiss HHC from this action because HHC does not "own, operate, or exercise any possessory control over the Hotel" and thus does not owe a duty to Plaintiffs. Def. Brief at 22.  Defendants argue that not only must HHC be dismissed as it pertains to Plaintiffs' negligence claim, but because Plaintiffs' loss of consortium claim is derivative of the negligence claim, that claim against HHC must also fail.  Def. Brief at 23.  In response, Plaintiffs contend that HHC's status as parent company over Hilton International, which is the parent company of HIPR, amounts to an ownership interest over HIPR necessitating that this Court find that HHC owed a duty to Plaintiffs.  Pl. Opp. at 28.  In the alternative, Plaintiffs argue that even if this Court finds that HHC did not own or exercise control over HIPR and the Hotel, that the doctrine of apparent authority dictates that HHC owed a duty to Plaintiffs.  *Id.* at 29 – 31.  Plaintiffs' arguments are not persuasive. Thus, the Court recommends that HHC be dismissed from this action as well.

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss, "the Court must accept as true all of the factual

-14-

allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Acevedo v, Monsignor Donovan High Sch.,* 420 F.Supp.2d 337, 340 (D.N.J. 2006) (citing *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001)). The Court generally "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Moreover, when considering the sufficiency of the pleading, Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations and quotations omitted).

In making their arguments, Plaintiffs rely upon both the allegations in their Complaint and their accompanying certifications and information gleaned through discovery. As noted above, in a motion to dismiss, the Court may only rely upon the facts as plead in the complaint. This Court finds that, based solely on the allegations in the Complaint, Plaintiffs claims against HHC must fail because there is no mention of a an ownership interest in the Hotel to give rise to HHC's duty to Plaintiffs. Plaintiffs have not pled that HHC has any ownership or operation interest in the Hotel, but instead pled that HHC has an ownership interest in the "brand." (Complaint at ¶ 4). Moreover, there is no mention in the Complaint of any specific representations made by HHC, nor of Plaintiffs' alleged reliance on those representations to support their theory that HHC owed Plaintiffs a duty based on apparent authority. Finally, Plaintiffs' allegations in the Complaint under both counts fail to delineate amongst the parties, merely referring to "Defendants" as a collective unit. (*See* Complaint at ¶¶ 13-15, 18, 22). Without more allegations specific to HHC's alleged duty, the Complaint fails to state a claim against HHC upon which relief can be granted. *See Iqbal*, 129 S.Ct. at 1949 ("[w]here a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal citations and quotations omitted).

Notwithstanding the above, even if this Court were to consider the materials presented by Plaintiffs outside of the Complaint, the Court's findings do not change. Plaintiffs have failed to plead facts adequate to allege that HHC owes a duty of care to Plaintiffs under either theory.

## A.      HHC's Duty to Plaintiffs

A "prerequisite to recovery on a negligence theory is a duty owed by defendant to plaintiff." *Strachan v. John F. Kennedy Memorial Hosp.*, 109 NJ Super. 523, 529, 538 A.2d 346, 349 (N.J. 1988). Generally, a proprietor of premises to which the public is invited for a business purpose owes a duty of reasonable care to those who enter the premises upon that invitation. *Abraham v. Raso*, 997 F.Supp. 611, 613 (D.N.J. 1998) (internal citations omitted). In New Jersey, the plaintiff bears the burden of proving that the defendant breached the duty of care owed to them. *See Jarrah v. Trump Hotels & Casino Resorts*, 487 F.Supp.2d 522, 525 (D.N.J. 2007). The question of whether a duty exists is a matter of law properly decided by the Court, involving consideration of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. *See id*. at 526. In the instant action, Plaintiffs seek to establish that HHC owed them a duty of care, despite evidence that HHC is the parent company of Hilton International, not HIPR, and HHC does not own or operate the Hotel.

Accordingly, Plaintiffs seek for this Court to impose a duty of care on a far-removed parent, but fail to provide a single case which stands for the proposition that a parent company has a duty to the guest of a hotel of which it does not directly own or exercise control. On the contrary, generally

-16-

there is no duty for a parent to supervise its subsidiary and a parent corporation is "not normally liable for the wrongful acts or contractual obligations of a subsidiary even if or simply because the parent wholly owns the subsidiary." *See, e.g., Jean Anderson Hierarchy of Agents v. Allstate Life Ins.*, 2 F.Supp.2d 688, 691 (E.D. Pa 1998); *see also Marzano v. Comp. Sci. Corp.*, 91 F.3d 497, 513 (3rd Cir. 1996) (discussing that a court may not depart from this principle unless it finds that a subsidiary is a mere instrumentality of the parent corporation).

In New Jersey, parent and subsidiary corporations are distinct legal entities and courts are extremely reluctant to pierce the veil between the two entities without compelling circumstances. *Ricoh Co v. Honeywell*, 817 F.Supp. 473, 481 (D.N.J. 1993).  Plaintiffs have not provided any factual allegations to support this Court piercing the corporate veil.  *See Ramirez v. STi Prepaid LLC*, 644 F.Supp.2d 496, 506-07 (D.N.J. 2009) (providing guidance on how to state a claim for piercing the corporate veil).  On the contrary, Defendants have offered sworn testimony from HIPR's designated representative to demonstrate that HHC does not own or operate the Hotel.   The record shows that HIPR owns and operates the hotel, not HHC, and Plaintiffs have not presented any evidence to the contrary.   In fact, the record before this Court demonstrates that Hilton International is the parent company of HIPR and HHC is the parent company of Hilton International, thus making the Hotel twice removed from HHC.  *See* Def. Br., Exs. C & G.  Therefore, HHC should be dismissed as it did not provide sufficient factual allegations to support the claim that HHC owe a duty to Plaintiffs.

**B.     HHC's Duty Through Apparent Authority**

Next, Plaintiffs argue that HHC should be subjected to liability for negligence under the doctrine of apparent authority.  Plaintiffs contend that HHC should be subject to liability under a theory of apparent authority because HHC  "represents to Plaintiffs and the public that it owned,

managed, or otherwise controlled the Caribe Hilton Puerto Rico." Pl. Brief at 29.  In support of this contention, Plaintiffs state that (1) the Hilton Hotel name and logo appeared throughout the Caribe Hilton Puerto Rico; (2) HHC's website states that HHC owns, operates or franchises all hotels within the Hilton family of hotels; (3) guests can book a stay at the Caribe Hilton Puerto Rico on HHC's website; (4) HHC provides marketing support to its franchisees and (5) Plaintiffs relied upon the Hilton name in booking their trip to Puerto Rico. *See id.* at 30.  Plaintiffs vigorously argue that HHC should not be permitted to "hide behind their convoluted corporate structuring." *Id.* at 31.  As set forth below, Plaintiffs have failed to provide evidence to demonstrate that HHC had a duty to Plaintiffs based on apparent authority.

Under New Jersey law, "a principal is liable for the tortious acts of an agent acting within the scope of his or her authority." *Baldasarre v. Butler*, 132 N.J. 278, 289, 625 A.2d 458, 464 (1993). This agency relationship can be established through apparent authority which "arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." *Dymburt v. Rao*, 881 F.Supp. 942, 945 (D.N.J. 1995).  To establish apparent authority, however, a party must show that: "(1) the appearance of authority has been created by the conduct of the alleged principal and not solely by the conduct of the putative agent; (2) a third party has relied on the agent's apparent authority to act for a principal; and (3) the reliance was reasonable under the circumstances." *Mayflower Transit, LLC v. Prince*, 314 F.Supp.2d 362, 374 (D.N.J. 2004).

Importantly, reliance must exist before there can be a finding of apparent authority.  *Jarrah*, 487 F.Supp.2d at 529 (internal citations omitted).   Moreover, apparent authority cannot be based solely upon the representations of the alleged agent (here HIPR).  *Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F.Supp. 1035, 1041 (D.N.J. 1990).  Instead, a finding of apparent

authority must be based on the actions of the alleged principal (here HHC).  *See Lobiondo v. O'Callaghan*, 357 N.J. Super. 488, 497, 815 A.2d 1013, 1019 (N.J. Super. Ct. App. Div. 2003).  In order to recover against the principal under this doctrine, a party must therefore establish reasonable reliance on indicia of authority or representations originated by the alleged principal and not the putative agent.  *See Gizzi v. Texaco*, 437 F.2d 308, 309 (3rd Cir. 1971).  In the instant action, however, Plaintiffs fail to demonstrate reliance upon any actions by the alleged principal, HHC, when they booked their stay with the Hotel.  In fact, upon review of the Complaint, there are no allegations of either representations by HHC or of Plaintiffs' so-called reliance upon such representations.  The Complaint treats HHC and HIPR as one unit, referring to an alleged duty by "Defendants."  *See* Complaint at ¶¶ 13-15, 18, 22.

   Moreover, Plaintiffs spend much of their brief arguing that the use of the Hilton name and logo in the Hotel and on the website led the Plaintiffs to believe that HHC owned the Hotel.  *See* Pl. Opp. at 29-31.  Plaintiffs, however, proffer no factual allegations that HHC was the specific entity that authorized or required that HIPR use the Hilton Hotel name and logo in the Hotel.  Plaintiffs were permitted ample time in discovery to explore the relationship between HHC, Hilton International and HIPR but presented no evidence of agreements or specific terms of the relationship between the three entities to demonstrate reliance on alleged HHC representations.  Thus, it is not clear from the record presented to the Court that HHC was the principal which authorized HIPR to use the Hilton logo and name and therefore Plaintiffs have not demonstrated apparent authority.

   Plaintiffs also used a thirty party website, Orbitz.com, to book their stay with the Hotel, not HHC's website.  *See* Pl. Opp., Thomas Cert, Ex. A, ¶ 3.  In spite of this fact, Plaintiffs still contend that they utilized HHC's website to glean information about the Hotel.  Mr. Gianfredi's certification,

-19-

however, does not specifically state what information on the HHC website he relied upon when he made his reservation, only that he visited HHC's website. *See id.* Moreover, Plaintiffs have not argued or even suggested that they relied on HHC's marketing or any representations found on the HHC website when they booked their stay at the Hotel. Plaintiffs' utilization of Orbitz.com to make their reservation belies any such reliance. Finally, Plaintiffs point to use of the word "Hilton" in the name of the Hotel. Merely pointing to the name of the Hotel is insufficient to establish reliance and thus, Plaintiffs have failed to plead factual allegations to support this Court finding that HHC owed them a duty pursuant to the apparent authority doctrine. As Defendants have aptly pointed out, the record does not reflect any connection between HHC and the Hotel, other than a parent subsidiary relationship.

In sum, Plaintiffs have failed to demonstrate any representations made by HHC and their reliance upon such conduct and representations to merit a finding that HHC owed Plaintiffs a duty pursuant to apparent authority. Thus, this Court recommends that the claims against HHC be dismissed.

## C.    Loss of Consortium Claim

Finally, because the loss of consortium claim is a derivative of the negligence claim, the claim should be dismissed against HHC as well. *See Reiff v. Convergent Tech.*, 957 F.Supp. 573, 584 (D.N.J. 1997) (dismissing plaintiff husband's loss of consortium claim after granting defendants summary judgment on plaintiff wife's claims and stating that "[l]oss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse." ); *see also Acevedo,* 420 F.Supp.2d at 347- 48 (explaining that a loss of consortium claim is a derivative claim and dismissing such claim after dismissal of the plaintiffs' underlying claim); *Walko v. Kean Coll. of New*

-20-

*Jersey*, 235 N.J. Super. 139, 156-57, 561 A.2d 680, 688 (N.J. Super. Ct. Law Div. 1988) (dismissing

plaintiff husband's loss of consortium claim after granting summary judgment in favor of defendants

on plaintiff wife's claim).

## V.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Sheridan that HIPR's

motion to dismiss for lack of personal jurisdiction and HHC's motion to dismiss for failure to state

a claim be granted.   Pursuant to Local Civil Rule 72.1, the parties have ten days from receipt of this

Report and Recommendation to file and serve any objections.

s/ Esther Salas                                    
**HON. ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**